The case is D. Keith Heflin v. Coleman Music at our 2012-12-87. We will hear from Mr. Triggs. Pleased to report my name is John Triggs. I represent Mr. Heflin on this appeal. I'll move right to the topic that occupied so much time in the argument just before, and that's the question of disclaimer. Now, in overview of disclaimer, you hear that they're unambiguous all the time. And when you read me the cases, it's very obvious what the answer will be. Because what the applicant, what the inventor has done is said, I'm different from something. I'm different from a piece of prior art. I'm different. That's the key thing that happens. There's a second tier of cases, again, we heard much about this before, where it's often the defendant looking for a disclaimer where they look to the preferred embodiment. And the preferred embodiment says, look, the way to practice my invention is to do A and B, but do as little of B as possible. And the defendant then says, well, that's a disclaimer. I do B. I don't infringe. You said you're different. You see those cases as well. Here we have something that I think is very unique. First of all, you look at the defendant's brief. You see there's about 10 pages of characterization of what my client said or what we said in the process. There's no cites to the record. Indeed, the only sentence or two that drives this entire patent disclaimer argument is best read. And let me just do that because I think that sets the table for my argument. This is at page 11 of Mr. Coleman's brief. This is what they say. This is what the lawyers say. Furthermore, in distinguishing his invention over Rademacher, Heflin expressly argued that the Rademacher system was different from his invention because the Rademacher system did not dispense collector cards. Now, that's typical of, as I said, those 10 pages. That's what the lawyers said. But if you read what counsel, what the prosecutor said, it's very different and it's a critical distinction. Rademacher describes a pin vending dispenser for selling telephone calling cards. I don't really care how they describe it. Why don't we just look at how your client described it in the prosecution history itself? Page 599 of the appendix. Yes. Let's focus on that. So why doesn't that amount to a disclaimer? Because he's talking about the preferred embodiment. No, he says in the present invention, comma. That's not the preferred embodiment. That's the present invention. He's expressly saying that this is his invention. Yes, he is, Your Honor. He is saying it's collector cards. But neither Rademacher nor Hulk practice the promotional game no matter what else they do. I agree. And that would be a separate basis upon which to distinguish it. But that's not the basis he chose in these two paragraphs on page 599. On page 599, he said in the present invention, the user is paying money for the value of the card being dispensed from the machine and not a no-value card with some other associated value assessed by a pin number. Yes, Your Honor. But he's responding to a rejection that's based on a description of the preferred embodiment described by Rademacher. That informs all of those comments. And that's what my fundamental position is, that Rademacher described his preferred invention as a no-value card. And all we were saying to the Patent Office was that that teaches away from what we do. We're not saying, we're not making the distinction we're different than. What we were attempting to do in all of that commentary was explain to the Patent Office that not my preferred embodiment, by the way, but someone else's preferred embodiment taught away. Said, look, you preferred our no-value cards. That's what I'm telling you. So that just points you in a different direction. Therefore, the Rademacher reference directly teaches away from the distribution of collector cards and their inherent value as taught by the present invention. Yes. But what I'm saying is that that's what we're saying. Rademacher teaches away. We're not saying we're different from Rademacher. Sure you are. How can you say he teaches away but we're not different from him? Because Rademacher has other disclosures in his patent that we could have been talking about. They're talking about the preferred embodiment. That was the specific question we were answering. Both of these patents teach that the cards are valueless without the associated transactions. I agree. If that were the only sentence in there, it would not say anything about your invention. It would just be characterizing what they teach. Then you want to say this, i.e., the fact that both of these patents teach cards which are valueless. This directly teaches away from the value of the collectible cards of the present invention where the user is paying money for the value of the card being dispensed from the machine and not a no-value card with a value associated with some account balance. That's exactly what you disclaimed. Right there. Your Honor, I respectfully disagree. All of that is in the context of a rejection that would ask us, what about Rademacher? He has a preferred embodiment. Why doesn't that teach? We say that taught away. That's all we limited it to. Are you saying Rademacher does have a collector card embodiment? No, it does not appear to. He tells us it does not. Let's put it that way, Your Honor. That's all we could go on at that time. I don't know what Rademacher did. We just know what his patent said. His patent said no value. That's what we have to assume. What is it you're saying? What distinction, then, did you make here? The distinction we made was not how we were different from Rademacher. The distinction we made is that Rademacher, because he stresses the no-value card, teaches away from what we're trying to accomplish, which is linked to the no-value card with the promotional gain. We're supposed to ignore the phrase in contrast to the President's invention? No, Your Honor. I think you have to take it in context. That's my position. I think that when you read this rejection, when you read all it said, you see where it's coming from and you see that what we're attempting to establish is Rademacher teaches something as a preferred invention. That's what we're being asked about. That's what we're trying to distinguish. He sends everyone in a different direction than we're going in. And no one mentions promotional gain as well. So that's what our position is, Your Honor. And I think the distinction that's important is that we're not talking about our preferred embodiment. We're talking about somebody else's preferred embodiment when we try to make this analysis, because that's how it was presented to us. And so that's what we did and that's how we responded. It was limited. Right. So when you're contrasting it to your invention, what contrast were you drawing? What about your invention is in contrast? My invention is about a no-value card, but it's not only a no-value card. It can be a card that has value both intrinsic to itself and from some outside source, such as phone credits or Internet credits. So that's the point we were trying to make. You're saying your invention extends to a no-value card? No. You could have – I don't apologize, Your Honor. There is no such thing as a no-value card. If you get a card, in this case, in this patent, it has some intrinsic value. It's a collector card, but it also has what we call extrinsic value, which is the value you get from the phone credits or the Internet credits that you buy. That's the other value it has. So our cards are combined. And that's one of the most remarkable things in this case is that the judge determined this directly teaches away from the value of the collectible cards of the present invention where the user is paying money for the value of the card being dispensed from the machine and not a no-value card with a value associated with some account balance. I don't see how I can interpret that sentence as anything but you characterizing your invention as not covering a no-value card with an associated account balance. That's what you expressly say. See, this is my invention. This is what it is. Your Honor, as I said, I beg to differ. I think what we're arguing about is the context in which all of those statements were made and how the rejection was made to us and what we thought we were responding to. And we were assuming what Radebacher's preferred embodiment was, and we were responding to that. Now, the reality is – and that's the second point that I need to at least address – is that the court below made a determination that not only rejected all of the systems claims on the basis that there was no intent, we hadn't shown intent to use those to produce cards that would infringe, even said that our machines, which we produce, don't practice the art of the invention and that he came up with an interpretation that basically tossed his previous claim construction and determined that if you had a card with intrinsic value and it received some value from some outside source, that also was not within the patent. And where that came from, we don't know. And that differs from the claim construction. So what you're saying is you think your cards can have both an intrinsic and external value. Exactly. Exactly. And there's nothing in the patent where anybody says we ever even talk about abandoning that. It's the intrinsic value that's important when linked with a promotional gain. How do you address – I mean, you make the argument that something could be non-infringing on day one when it's sold with only an external value, but then because of the vagaries of how crazy people collect things, it develops an intrinsic value. So how does a would-be – for instance, someone manufacturing a machine, how do they know whether something is going to become collectible? Well, we made that argument below and failed in the claim construction area. And we don't disagree with the claim construction we were given by the trial court, which is that it has to have some intrinsic value at the time it's purchased, not something afterwards. All of that discussion about – But in your gray brief, you say something can – even if it didn't have an intrinsic value when they first started producing it, at the time it's purchased, some later point in time, that same thing could have a dual value. Yes, we did, Your Honor, but there's better ruling on the construction, and we don't disagree with the current construction. We were not successful. The court came down not really in the middle. I think more on the defendant's side of the instruction they wanted. But that was an argument we made, and I should also tell you procedurally, the Markman hearing got adjourned a couple of times. It ended up coming after discovery closed and after everybody's experts had opined before we ever had a Markman hearing. So all of this conversation about what was done beforehand is not relevant to this appeal. It's not something we're arguing. We're perfectly happy with the construction that the trial judge gave to the claim. What do you mean by at the time of purchase, or what do you understand to be meant by at the time of purchase? Because it has – and by the way, Judge, this is a fact question for the jury. There's always some uncertainty to say that we have to know for sure everything that we're going to do. People design around people. But, counsel, it's only a fact question if you introduce some evidence to raise a question of fact. Did you introduce any evidence that the cards that they're selling have intrinsic value to collectors or individuals at the time of purchase? We had an expert report that opined on that and said so. But I must admit, that was before Markman. But he did make that – that's in the record. That was our expert report. Now, that's pre-Markman. But, yes, he said what the defendant was selling was a collectible card. Where in the record that is? Your Honor, I can get that to you. I can't give it to you, but I can give it to you. I have that site, but I don't. So, I've run over my time, but let me just stress on the indefinite argument, that's really all about what's already going on before. The definition that was proposed by the defendants in the large measure adopted by the court was something they said was clear and definite and would be appropriate. As I said, they probably got 70 percent of the definition they wanted. We got 30 percent. So to now say the definition they in large measure proposed is indefinite, I think is inappropriate.  We will do that. Thank you. Ms. Borland. Good morning. Good morning. With regard to the disclaimer of the cards in Rademacher, Heflin's counsel stated that they were merely responding to the preferred embodiment of Rademacher as being no value cards. If you look at Rademacher, Rademacher expressly defined what a no value card was, that it was a card without a PIN number. That was the purpose of Rademacher. At the time before Rademacher, operators of machines that dispense telephone cards put the cards in. They had active PIN numbers. They could invest all sorts of money into that inventory, and if they were stolen, they would suffer a substantial loss. Well, Rademacher fixed that, said, Well, let's put the cards in without active PIN numbers, and then when someone purchases, we'll either put the number on the card or dispense a receipt with the card that would have the PIN number. So you had no value cards before dispensal, but cards with PIN numbers or receipts that gave them value after. And in Heflin's prosecution history, he addressed all these cards. He said you could have cards that are no value cards. Rademacher talked about you would have a piece of label that you could remove from your receipt and put it on the card. But then he also talked about cards with PIN numbers printed on them for convenience. Well, Rademacher never said cards with PIN numbers are no value. Rademacher said cards without PIN numbers are no value. It's Heflin who said cards with PIN numbers have no value. And we know from the way Heflin has used value throughout this, the value he's talking about is a value as a collectible. And I think that Mr. Heflin should be bound by his claim. Well, do you agree that his expert report says that the particular cards, at least on the free spin machine, that they have a collectible value? Well, the problem with the expert is that he says the reason they're collectible is because they have a PIN number. So if they have a PIN number that makes them no value, then it seems that the expert can't have both ways. He can't say they're collectible because they have a PIN number, but then we're different from Rademacher because those are no value cards. Was there no reference to the fact that they're collectible because they have particular graphics? No. What Mr. Perkis said... Let me find that. At age 299, he said, a telephone card has a collectible value if it contains the data needed to execute a phone call somewhere in the world. That was his opinion as to what makes a phone card collectible. And that's exactly what data was on the Rademacher cards. And Rademacher also disclosed that the cards could have graphics. The plaintiff, or Mr. Heflin, also talked about the pulp cards. Those were credit card-like cards. They'd have photos of the individual that was using them. Certainly, that would be... If it was Brad Pitt's picture on the card, that would be a collectible item. The references that were cited, they never talked about collectible value. That's all Heflin's input and the way he's characterizing those references. They never disclosed whether they were collectible or not. What about the argument that the court's limitation on its own construction that says you can't have any external value, that that goes too far? I think he's arguing that you can have an external value and an internal value, a collectible value. Here, the problem is that Heflin's own expert said those values are the same thing. I don't think you can have it both ways. If you disclaimed a card that has a PIN number on it as not a collectible, then you can't say, oh, but if it has a PIN number, then it is collectible. So that's the problem. And the cards in Rademacher had pictures on them that were specifically disclosed. And for Heflin to say that he was only addressing the preferred embodiment and not the other embodiments is wrong because he did address multiple embodiments in that paragraph in the history. And then the one other argument, they complained that we have two different proposed constructions on the disclaimer and that, therefore, it's ambiguous. And we would disagree with that, that in the original summary judgment motion, we thought that they were only attacking the machines that dispense paper receipts and not cards. And if you look at, we said... Wait. That paper telephone... That the claim should be construed to exclude paper telephone service receipts or other print materials that have no intrinsic value. And the no intrinsic value was Heflin's own defined term as cards with PIN numbers, essentially. And in our briefing on that, we further explained that the term collector card should be interpreted to exclude no value paper receipts in which the value is related to the PIN and the associated services accessed by the PIN printed on the paper receipt. I mean, that is entirely consistent with the position we took at Markman. Once we learned that not only was he attacking machines that dispense the paper receipts, but the machines our client had originally operated under license with the actual plastic phone cards. And... Can you address his argument that at least as it relates to the apparatus claims that the machines are capable of dispensing collector cards? I know you cite the high tech, but isn't there an argument that this is more like revolution eyewear? I mean, I think the fundamental problem is that for a machine to be capable of dispensing collector cards, it has to have been loaded with collector cards. Our defendant's machines, there is no evidence that they were ever loaded with anything but either paper to print telephone receipts or the plastic phone cards. In other words, it gets down to claim construction of collector cards. Yes, yes, Your Honor, that's correct. So, I mean, I think first the claims don't allow for, it's not like Intel where you have some kind of limitation that says it's programmable or some of the other cases where the capable infringement argument could apply. Here, the language is clear. It requires a card dispensing mechanism that will be a mechanism for dispensing collector cards. There's no evidence that our client's machines were capable of dispensing anything but the paper receipts or the phone cards. And again, if the machines themselves never had collector cards, like a baseball card, something that is commonly viewed as something that is bought and sold to be collected as opposed to something that is bought for some other value, like a telephone service or internet time. Like use. Pardon me? Like use. Yes, yes. If you use the card for another purpose other than as a collectible. Anything further? I believe that's all I have. All right. Thank you, Ms. Baldwin. Mr. Triggs has a little under three minutes to rebut. Let me just try to address one point, which is the last one we just talked about. It should be, are they capable of? And the question is, are these cards capable of dispensing paper? The fact that you can put colored paper in, matte paper in, gloss paper in, change the font, change the print, is not any kind of material alteration. These machines are capable. These machines, they even said our machines are not capable of practicing our own invention. The judge determined that Mr. Coleman's use of our machines after his license expired was OK because our machines don't practice any of those first four claims. Well, wouldn't the Rademacher system be capable of dispensing cards? I mean, don't you have a problem? Don't you come back full circle to your disclaimers? I don't. I assume it was capable, Your Honor. As I stand here today, I have to assume so. But don't forget, this is in connection with the promotional game. And this is very clearly laid out. And that's what Mr. Coleman was doing, by the way. I mean, the record is clear on that. He's doing exactly the same thing when he worked for us and when he left us. He was selling promotional games using these collector cards. I understand the debates we've had before. But on system claims, this is not like you've got to remove something and take a part off and substitute a part in. We're talking about supplies here. That's the only thing that's driven. Or some programming where you change the typeface or what it produces. But you're not making any fundamental change in any aspect of this system. And that is clear from the case law. And that was improper. And at a minimum, that should be reversed. Thank you, Your Honor. I'm sorry. Is your invention a collector card or the game? It's a combination. And that's made clear in the record. It's a combination. Using that collector card. Your conceived collector card's a limitation. It is. It doesn't mean it can't have other associated value that comes from a third party source. But it has to be a collector card. It can or cannot have that other extrinsic value. Do you agree with your friend on the other side who said that your expert defined the collector value of these phone cards as the pin? No. Judge, it's a 30-page report. He had other information in there about the value, for example, that it shows locations. It shows pictures. Mr. Heflin's cards, which are in the record, have a picture of something on them. I forget now as I stand here. But there's any number of other attributes that he talked about that could make it collectible. And as I said, we're all now bound by the ruling we all thought we had after Markman, which was changed. So the one thing I want to stress is that on these systems claims, this machine is capable. In fact, it does do exactly what we're doing. And so it was our machine capable of doing this. And that portion of the judgment is clearly in error and should be reversed. Thank you, Your Honor. Thank you, Mr. Triggs. Case will be taken under advisory.